612 So.2d 1028 (1993)
Lucy Fullerton, Widow of Raymond FULLERTON, Plaintiff-Appellee,
v.
MONROE TRUCKING COMPANY, Defendant-Appellant.
No. 24304-CA.
Court of Appeal of Louisiana, Second Circuit.
January 20, 1993.
Writ Denied April 23, 1993.
Davenport, Files & Kelly by Ramsey L. Ogg, Monroe, for defendant-appellant.
Rankin, Yeldell, Herring & Katz by Alex W. Rankin, Bastrop, for plaintiff-appellee.
Before MARVIN, SEXTON and HIGHTOWER, JJ.
MARVIN, Chief Judge.
In this worker's compensation (w.c.) action for death benefits, the employer appeals a judgment in favor of the widow of the deceased truck driver-employee who *1029 died of a heart attack on January 14, 1990, when he stopped at a truck stop while on a trip for his employer.
The w.c. law in effect on the date of death is the applicable law in this instance. Hill v. L.J. Earnest, Inc., 568 So.2d 146 (La.App. 2d Cir.1990), writ denied. We apply LRS 23:1021(7)(e), as amended by Acts 1989, No. 454, § 1, effective January 1, 1990.
Finding the trial court erred in applying the prior law and that the 1990 law does not allow recovery on this record, we reverse and render judgment rejecting the widow's demands.
The widow failed to meet the statutory burden of proof, which states that
A heart-related or perivascular ... death shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this Chapter unless it is demonstrated by clear and convincing evidence that:
(i) The physical work stress was extraordinary and unusual in comparison to the stress or exertion experienced by the average employee in that occupation, and
(ii) The physical work stress or exertion, and not some other source of stress or preexisting condition, was the predominant and major cause of the heart-related or perivascular injury, illness, or death.
Before the 1989 amendment to § 1021, quoted above, a w.c. plaintiff had to prove by a preponderance of the evidence either that the heart attack was causally related in some measure to the physical work stress, strain or exertion of the employee's job, in addition to the heart attack occurring on the job (Guidry v. Sline Indust. Painters, Inc., 418 So.2d 626 (La.1982)), or that the heart attack was brought on by work-related extraordinary mental or emotional exertion. Ferguson v. HDE, Inc., 270 So.2d 867 (La.1972). See Carruthers v. PPG Industries, Inc., 551 So.2d 1282 (La.1989).

FACTS
On January 14, 1990, Raymond Fullerton, accompanied by his wife, was on a trip for his employer. He and his wife had driven about 100 miles on January 12 and about 200 miles on January 13, 1990. On January 14, he began driving about 7 a.m. and drove for more than two hours, stopping to eat breakfast at a truck stop in North Carolina. After parking his truck he walked a considerable distance to the truck stop and climbed one flight of stairs to enter a second-story lounge or restroom where he suffered his fatal heart attack.
Fullerton had suffered a heart attack on December 1, 1988, while at home awaiting surgery later that day to remove a pylonoidal cyst that was causally related to his employment as a truck driver. He had been off work for five days awaiting hospitalization for the scheduled surgery. Because of his heart condition, the cyst surgery was postponed, finally being accomplished on July 13, 1989.
Fullerton returned to work as a truck driver October 4, 1989, after recuperating from the surgery. The w.c. insurer, relating his time off to the cyst, paid him w.c. benefits from December 2, 1988, through October 2, 1989. The w.c. insurer paid the medical expenses for the 1989 cyst surgery, but did not pay medical expenses for treatment of the 1988-9 heart condition.
The w.c. hearing officer found that Fullerton was "overweight ... a heavy smoker [until his 1988 heart attack] ... a diabetic... [with] a family history of heart disease... [and] fairly intense, ... factor[s] that made him likely to have a heart attack." In written reasons for judgment, the WCHO also said, "This court feels that [the 1990] heart attack was caused by the same circumstances that caused the [1988] heart attack ... and hold[s] that it is a work related death ... covered by the ... laws in effect in 1988."
Mrs. Fullerton testified that three days before November 26, 1988, the date Fullerton stopped working to await the cyst surgery, he had symptoms of heart problems and had a heart attack in her "opinion." She said that Fullerton had passed out on two occasions, once while at work. Other than Mrs. Fullerton's testimony, the record *1030 does not contain any evidence of a causal connection between Fullerton's employment and his 1988 heart attack. We simply have no medical evidence connecting the 1988 heart attack with Fullerton's employment.
Fullerton's 1988 heart attack occurred about midnight at his home. His wife drove him to the hospital that night. The w.c. insurer testified that w.c. benefits were thereafter paid because Fullerton was not able to work until the work-related cyst was surgically removed and that expenses arising out of Fullerton's 1988 heart attack were not paid because no contention or showing was made that the 1988 heart attack was work related.
The physician who treated the 1988 heart condition testified that Fullerton, in 1988, was a nine or ten on a scale of one to ten as a high risk of having a heart attack. This record does not allow the factual conclusion that the 1988 heart attack occurred "in the course of" the employment or that the 1988 heart attack "arose out of" the employment. Compare King v. Wilson Bros. Drilling Co., Inc., 441 So.2d 68 (La.App. 3d Cir.1983), writ denied. The trial court apparently reasoned, as plaintiff argues here, first that the 1988 attack was a compensable injury and, secondly, that the 1990 fatal attack was a continuation of the 1988 attack. The first premise is erroneous on this record.

THE 1990 STATUTORY BURDEN
LRS 23:1021(7)(e), quoted above, required Mrs. Fullerton to prove, by clear and convincing evidence, two things about her husband's 1990 fatal heart attack:
That Fullerton's physical work stress was extraordinary and unusual in comparison to the stress or exertion experienced by the average truck driver, and

That his physical work stress or exertion, and not some ... preexisting condition, was the predominant and major cause of the heart-related ... death.

Our emphasis.
Unless the two requirements are proved, the statute clearly precludes a finding that Fullerton's fatal heart attack in 1990 was a personal injury by accident arising out of and in the course of his employment. See statute quoted supra.
Mrs. Fullerton testified that the following conditions experienced by Mr. Fullerton amounted to physical work stress that caused his fatal heart attack: driving in icy conditions, attempting to unfreeze the fifth wheel, the length of the last trip, and climbing the flight of stairs at the truck stop. She explained:
... I think it was two days before he had the heart attack. We got loaded in Pittsburgh, Pennsylvania, and it had been snowing that day. And we had been sitting most of the day because he didn't get loaded until it was almost dark. And he was nervous about that. And then we got started and he had to go across these overpasses, and he was real nervous about that because itlike I say, it had done started snowing, it was getting icy. And he got real nervous on one of the bridges, and I just talked to him and got him calmed down. And then we found a place to park. And he had to park at a roadside area, and when he parked the truck, it was real icy and the truck began to slide, and so he had to find another place to park. So therefore he was very nervous already and out of breath from just having to get out and look around to find another place to park. And then I believe it was the next morning when he was going to slide the fifth wheel and it was frozen. And it took him a long time to get it undone. In fact, I even tried to get out and help him pull the pin, or whatever it was that you have to pull to make it slide.
Mrs. Fullerton testified that they had been on this final trip for three weeks which was a week longer than his average or typical trip. She also testified that on the day of the fatal heart attack, Fullerton had taken two nitroglycerin tablets as he often did when his heart and chest hurt.
Mrs. Fullerton acknowledged, however, that all truck drivers in her late husband's category were sometimes required to drive in snow and ice and to work with and manipulate the fifth-wheel. We have no *1031 evidence that other drivers in decedent's category are not required to take three-week trips, to walk across parking lots or climb stairs at truck stops or elsewhere, even should we assume that the activities she described amounted to "extraordinary and unusual physical work stress." The comparison is not between the decedent's day-to-day activities as a truck driver, but between the decedent's activities and those of the "average employee in that employment." See Johnson, Development in the Law, 1988-1989Workers' Compensation, 50 La.L.Rev. 391, 407 (1989).
Moreover, the medical evidence overwhelmingly establishes that the 1988 heart attack resulted from occlusions Fullerton had in his arteries of 20, 50, 70 and even 100 percent, the effects of which were not reversed and which were permanent. As the WCHO found, Fullerton's treating physician agreed that it was "more likely than not" that the 1990 heart attack was brought on by the condition that caused the 1988 heart attack. As to the activities that were mentioned by Mrs. Fullerton (being on the road continuously for three weeks) being a factor in causing the 1990 attack, the treating physician said fatigue, "possibly [would have been a factor]," and that it "would be supposition" to say that the 1990 heart attack would be more likely to occur than if Fullerton had been at home for three weeks doing nothing.

CONCLUSION
The conclusion that Fullerton's "condition" after the 1988 attack "brought on" the 1990 attack does not make the 1988 law applicable to the 1990 attack, but instead strongly indicates that this "preexisting condition," and not the physical work stress, was the "major cause" of the heart-related death. § 1021(7)(e).
The record will not allow the conclusion that the physical work stress experienced by Fullerton was extraordinary and unusual in comparison to that experienced by the average truck driver, or the conclusion that the physical work stress, rather than the pre-existing heart condition, was the predominant and major cause of Fullerton's death on January 14, 1990. Fullerton's fatal heart attack is "not compensable" under the w.c. law, according to the statute.

DECREE
At appellee's cost, we reverse and render rejecting Mrs. Fullerton's demands.
REVERSED AND RENDERED.