JaFOGG, Judge.
The sole issue raised on appeal in this tort case is whether the trial court erred in granting summary judgment holding that Wal-Mart Stores, Inc. was Ruth Witek’s statutory employer and thereby exempt from tort liability. For the following reasons, we affirm.
Petitioners, Eugene R. Witek and Bethany Starr Witek Underwood, the husband and daughter of Ruth Witek, filed this suit for personal injuries. Therein, petitioners alleged that, while working for Wal-Mart Stores, Inc. (“Wal-Mart”) on April 27, 1993, Ruth Witek climbed a fifteen-foot ladder, suffered a heart attack and seizure, and fell to the floor. Ruth Witek died three days later. Named as defendants were Wal-Mart and James Morrisey, Ms. Witek’s supervisor.
Petitioners asserted that the accident was caused solely by defendants because they failed to provide the decedent, who had a history of seizure disorder, with a safe workplace; required the decedent to climb tall ladders; failed to provide the decedent with an accommodation for her work, considering her disability; failed to properly tailor the work of the decedent to her physical disability; imposed undue stress on the decedent to perform physical tasks for which she was physically and mentally incapable; and committed other acts of negligence that would be proven through discovery and at trial. Petitioners sought damages in the sum of $49,-999.99 for the pain and suffering of the decedent and for their own losses of consortium.
Defendants responded by filing a motion for summary judgment asserting that plaintiffs’ exclusive remedy is pursuant to the Workers’ Compensation Act (“the Act”). The trial court granted that motion and dismissed plaintiffs’ action.
|3On appeal, plaintiffs maintain that the trial court erred in granting summary judgment. They contend that the case of Hunt v. Womack, Inc., 616 So.2d 769 (La.App. 1 Cir.), writ denied, 623 So.2d 1309 (La.1993) allows them to pursue a tort remedy.
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine factual dispute. Kidd v. Logan M. Killen, Inc., 93-1322 (La.App. 1 Cir. 5/20/94); 640 So.2d 616. The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of actions. The procedure is favored and shall be construed to accomplish these ends. LSA-C.C.P. art. 966(A)(2).
It is well settled that the granting of summary judgment is proper only if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B). A fact is material if its existence is essential to the plaintiff’s cause of action under the applicable theory of recovery and without which the plaintiff could not prevail. Penalber v. Blount, 550 So.2d 577 (La.1989).
In the 1997 Regular Session, the Louisiana Legislature amended the summary judgment law by amending and reenacting Sections C and E of LSA-C.C.P. art. 966 and by repealing Sections F and G of the article. 1997 La. Acts No. 483. In part, the purpose of these amendments was to clarify legislative changes made to LSA-C.C.P. art. 966 in 1996 {see 1996 La. Acts, 1st Ex.Sess., No. 9, § 1), and to set forth the burdens of proof which must be met by the respective parties when a motion for summary judgment is made. 1997 La. Acts No. 483, § 4. These burdens of proof are stated in Section C of amended LSA-C.C.P. art. 966, as follows:
|4C. (1) After adequate discovery or after a ease is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted.
(2) The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the *649 matter that is before the court on the motion for summary judgment, the mov-ant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out .to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish.that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
Section 4 of Act 483 states that the purpose of the amendment is to “legislatively overrule” all cases inconsistent with Hayes v. Autin, 96-287 (La.App. 3 Cir. 12/26/96); 685 So.2d 691, unit denied, 97-0281 (La.3/14/97); 690 So.2d 41. In Hayes v. Autin, 96-287, p. 6; 685 So.2d at 694, the court set forth the following rules regarding the burdens of proof in summary judgment litigation:
Under the amended statute, the initial burden of proof remains with the mover to show that no genuine issue of material fact exists. However, under Art. 966(C), once the mover has made a prima facie showing that the motion should be granted, the burden shifts to the non-moving party to present evidence demonstrating that material factual issues remain. Once the motion for summary judgment has been properly supported by the moving party, the failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion.
The Hayes court also noted that the 1996 amendment substantially changed the law of summary judgment. Under previous jurisprudence, the summary judgment was not favored and was to be used only cautiously and sparingly. The pleadings and documents submitted in support of the motion for summary judgment were strictly construed; however, the documents submitted in opposition to the motion were treated indulgently. Furthermore, any doubt was resolved against granting the summary judgment, and in favor of trial on the merits. Hayes v. Autin, 96-287, p. 6; 685 So.2d Rat 694. The jurisprudential presumption against granting summary judgment was legislatively overruled by LSA-C.C.P. art. 966 as amended. Thus, the playing field between the parties is leveled in two ways: first, the supporting documents submitted by the parties should be scrutinized equally, and second, the overriding presumption in favor of trial on the merits is removed. Hayes v. Autin, 96-287, p. 6; 685 So.2d at 694.
In Morgan v. The Earnest Corporation, 97-0869 (La.App. 1 Cir. 11/7/97); 704 So.2d 272, unit denied, 97-3031 (La.2/20/98); 709 So.2d 775 this court determined that the amendment of LSA-C.C.P. art. 966 applies retroactively. Therefore, we review the present summary judgment in accordance with the rules set forth in the current version of LSA-C.C.P. art. 966 and with the Hayes decision.
Appellate, courts review summary judgments de novo under the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors, 591 So.2d 342 (La.1991). Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Penton v. Clarkson, 93-0657 (La.App. 1 Cir. 3/11/94); 633 So.2d 918.
Although the pleadings differ substantially, the evidence before the court on the motion for summary judgment establishes the following undisputed material facts. Mr. Witek testified that Ms. Witek suffered from epilepsy from her late teens through the time of her death; she was 46 years of age when she died. For twenty-five years prior to the fall of 1992, she had suffered only petit mal seizures. However, in the fall of 1992 the frequency of her petit mal seizures increased and her medication was adjusted by a neurologist in order to control this activity. •
| ¡¡Subsequently, she began to experience grand mal seizures. Her first grand mal seizure occurred approximately one month after the change in her medication. Prior to January of 1993, Ms. Witek suffered three grand mal seizures in relatively close succession. The first took place at home. Two *650 more occurred at her workplace. Her fourth and final grand mal seizure occurred at the time of the incident on April 27, 1993. Ms. Witek always maintained that she could feel her seizures coming on and had time to take precautions.
Ms. Witek was working alone when the episode that led to her demise occurred. Darren Hebert, an employee of Wal-Mart, found her lying on the floor of the lay-away department between two lay-away bins that were approximately four feet apart. He testified that she was face down, with her chin propped up on a box. Upon finding Ms. Witek, Mr. Hebert ascertained that she was not breathing and called for help. Karen Jackson, also a Wal-Mart employee, testified that, after calling 911, she went to Ms. Witek and could not find a pulse. She noticed a slight cut on Ms. Witek’s hand. Both Mr. Hebert and Ms. Jackson testified that no ladder was in the area where Ms. Witek was found.
James Morrissey testified by deposition that he first became aware of Ms. Witek’s epilepsy shortly after he hired her to work at Wal-Mart. Her application for employment reflected that she had the condition but that it was controlled by medication. He testified that he and others discussed her condition with her and encouraged her not to climb and to function within safe bounds considering her condition. He stated that Ms. Witek assured him that she could tell when she was about to have a seizure and had time to climb down a ladder before the seizure occurred.
Dr. Louis H. Martinez, a medical doctor who is board ^certified in both critical care medicine and internal medicine, first saw Ms. Witek when she was admitted to the hospital after the incident on April 27, 1993. He testified that, upon reaching the emergency room, she was unstable and had suffered brain death as a result of hypoxia, which is a lack of oxygen to the brain. He opined that a seizure caused her to have respiratory arrest and then cardiac arrest. He stated that the cause of cardiac arrest in healthy people with no history of cardiac or heart arrhyth-mias and no evidence of primary cardiac disorder, as was Ms. Witek, is usually respiratory arrest.
On appeal, appellants assert the trial court erred in granting summary judgment because “there is sufficient circumstantial evidence to justify the conclusion that immediately prior to her accident, Ruth Witek tripped and fell, thereafter suffering a heart attack.” They rely on the deposition of Karen Jackson wherein she stated that the decedent was found near a box that held an entertainment center that was sticking out into an aisle between two movable bins which stored products to be sold in the store. Ms. Jackson stated’that the box extended into the aisle because it was too long to store in the storage bins. Additionally, Mr. Hebert testified that, when he found Ms. Witek on the floor, her chin was propped .upon a box. Appellants also rely on the emergency room report which shows that the decedent was brought in with a swollen ankle. Appellants contend that this ankle injury is consistent with their theory that Ms. Witek tripped and fell. Appellants assert that, under their theory of the case, they have a cause of action in tort under the case of Hunt v. Womack, Inc., 616 So.2d 759 (La.App. 1 Cir.1993).
In that case, the court addressed LSA-R.S. 23:1021, which provides as follows:
(e) Heart-related or perivascular injuries. A [gheart-related or perivascular injury, illness, or death shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this Chapter unless it is demonstrated by clear and convincing evidence that:
(i) The physical work stress was extraordinary and unusual in comparison to the stress or exertion experienced by the average employee in that occupation, and
(ii) The physical work stress or exertion, and not some other source of stress or preexisting condition, was the predominant and major cause of the heart-related or perivascular injury, illness, or death.
While this legislation does create a window of tort liability for employers that is in addition to their liability for intentional torts, we find that appellants’ reliance on this jurisprudence is misplaced. This legislation is concerned with heart-related and perivascular *651 injuries. Herein, the undisputed medical evidence shows that Ms. Witek suffered an epileptic seizure. Furthermore, -the lay testimony supports this conclusion. Although appellants theorize otherwise, it is clear that, viewing the evidence of the parties equally, appellants have not established an issue of material fact as to the cause of Ms. Witek’s death.
The factual scenario before us differs from that of the Hunt case in which the catalyst of the employee’s injuries was a heart attack, thereby impheating the provisions of LSA-R.S. 23:1021. Herein, the catalyst of Ms. Witek’s injuries was a epileptic seizure, which is a disorder of the nervous system. Such does not fall beyond the remedy of workers’ compensation.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs are assessed against the appellants.
AFFIRMED.
SHORTESS, J., concurs with reasons.